(71 App. Div. 584.)

PEOPLE ex rel. DEVERY v. COLER, City Comptroller.

(Supreme Court, Appellate Division, First Department. May 9, 1902.)

1. MUNICIPAL CORPORATIONS—OFFICERS—REMOVAL BY GOVERNOR—STATUTES—
　　CONSTITUTIONALITY.
　　　Laws 1901, c. 33, terminating the office of police commissioners in New York City, and vesting all their powers in a single commissioner, who may be removed by the mayor or the governor whenever public interest requires, is not repugnant to Const. art. 10, § 2, providing for filling offices by appointment by such authorities as the legislature may designate, because vesting the power of removal of such police commissioner in the governor was practically a nullification of the mayor's power of appointment.

2. SAME—EFFECT OF PARTIAL INVALIDITY.
　　　Laws 1901, c. 33, § 2, abolishing the offices of police commissioners, substituting a single commissioner, and providing for his removal by

the mayor or the governor, though unconstitutional, in conferring power of removal on the governor, is not invalid in toto, since the remainder of the act may be given effect consistent with the legislative intent.

**3. SAME—SUBJECT AND TITLE.**

Laws 1901, c. 33, terminating the terms of office of the police commissioners of New York City, providing for the appointment of a police commissioner, and abolishing the office of chief of police, is not repugnant to Const. art. 3, § 16, providing that no local bill shall embrace more than one subject, since it only embraces the subject of the reorganization of the police of New York City.

**4. SAME—DUE PROCESS OF LAW.**

Laws 1901, c. 33, abolishing the office of chief of police of New York City, is not violative of Const. art. 1, § 6, providing that no person shall be deprived of property without due process of law, because the charter created a police pension fund, by which any member of the police force, after 25 years' service, was entitled to a pension for life, and such chief of police had been a member of the police force since 1878.

**5. SAME—IMPAIRMENT OF CONTRACTS.**

Laws 1901, c. 33, abolishing the office of chief of police of New York City, is not repugnant to Const. U. S. art. 1, § 10, prohibiting laws impairing contracts, because such officer had continued on the police force since 1878, and after 25 years' service was entitled to a pension for life, as there was no contract by which he could claim continuance in office.

Van Brunt, P. J., and Patterson, J., dissenting in part.

Appeal from special term, New York county.

Petition for mandamus, on relation of William S. Devery, against Bird S. Coler, comptroller of New York City. From an order denying the writ, relator appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Abram I. Elkus, for appellant.
Theodore Connoly, for respondent.

INGRAHAM, J. · The relator applied for a mandamus requiring the respondent to pay him his salary as chief of police of the city of New York, upon an affidavit in which he alleged that he entered the police department of the city of New York as a patrolman on or about the 19th day of June, 1878, and has served continuously in said police department since that date; that on the 30th day of June, 1898, he was duly appointed chief of police of the city of New York, since which time he has performed, and been willing at all times to perform, his duties as such chief of police; that on or about the 22d day of February, 1901, there was an act passed by the legislature of the state of New York which, in terms, abolished the office of chief of police of the said city of New York, which he then held; that the relator protested in writing against such removal, filing his protest with Michael C. Murphy, who was the commissioner of police appointed under the said act, the ground of protest being that the said act was contrary to the constitution of the United States and the constitution of the state of New York, and was therefore of no effect; that he had demanded from the comptroller his salary for the month of February, 1901; and that the said comptroller neglected and refused to adjust the same, or make payment therefor.

Although there are several insuperable obstacles in the way of the relator which would prevent any relief in this proceeding, as there have been several appeals in other proceedings argued with this appeal, and the question of the constitutionality of this act must be passed upon, we will dispose of it on this appeal. The relator claims that this act violates several provisions of the constitution of the state of New York, and one provision of the constitution of the United States. The act in question is chapter 33 of the Laws of 1901. Section 1 provides that the terms of the office of the police commissioners of the city of New York, constituting the police board, should cease and determine within ten days after the passage of the act, and provision is made for the appointment by the mayor of the city of New York of a single police commissioner. Section 2 of the act provides that the said commissioner shall, unless sooner removed, hold office for the term of five years, and until his successor shall be appointed and has qualified; that the said commissioner may, whenever, in the judgment of the mayor of said city or the governor, the public interests shall so require, be removed from office by either, and shall be ineligible for reappointment thereto; that the successors in office of the said commissioner shall also be appointed by the mayor of the city within ten days after any vacancy shall occur, and shall be removed by either the mayor or governor, or whenever the public interests so require. Section 3 abolishes the office of chief of police, and directs that the powers, duties, and functions exercised by and imposed on said chief of police shall be granted to, concentrated upon, and vested in the said police commissioner. Section 4 provides that the said commissioner shall have the power to appoint, and at pleasure remove, two deputies, to be known as "First Deputy Commissioner" and "Second Deputy Commissioner." Section 5 abolishes the bureau of elections. Section 6 constitutes the comptroller the fiscal officer of the police department, and vests him with all the powers and functions theretofore exercised by the treasurer of the police board. The intent of the legislature is apparent. By it the terms of office of the police commissioners of the city of New York were ended, and provision was made for the appointment of a single commissioner, in whom were vested all the powers of the police commissioners and of the chief of police then in office. The office of chief of police was abolished, and the powers and duties exercised by him were vested in the police commissioner.

The relator first claims that this act is in conflict with section 2 of article 10 of the constitution, which provides that "all city, town and village officers, whose election or appointment is not provided for by this constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof as the legislature shall designate for that purpose"; that it is because of the provision of section 2 of the act, which authorized the governor to remove the officer appointed by the mayor as police commissioner, that the whole act is void, as in violation of this provision of the constitution; that vesting in the governor a power of removal of the police commissioner, as said by counsel for the relator, "practically nullifies the mayor's power of appointment." The right to appoint to a public office is the right to designate the individual who is to

fill that office, and it is this power of selecting the individual who is to fill the office that the constitution requires shall be exercised by such authorities of the city as the legislature shall designate. There is no express provision that restricts the power of the legislature as to removals of municipal officers, nor anything that prevents the legislature from abolishing an office filled by an appointee of the city authorities. It is settled beyond dispute that the legislature has power to abolish an office, or to terminate the term of a city officer who holds his office under legislative sanction. If the legislature had the power to remove from office a police commissioner appointed by the mayor of the city of New York, I cannot see that it is a violation of this provision of the constitution to authorize the governor to. exercise that power. It certainly is no greater restriction upon the power of appointment for the governor to remove an officer appointed by the mayor of a city, than it is for the legislature, by a direct enactment, to remove such an officer. The constitution has no relation to the term of office, to the duties of the officers appointed, or to the manner of their removal. It restricts the power of the legislature in providing for the appointment of local officers, so that the authority who is to appoint must be an officer of the municipality of which the appointee is an officer; and it seems to me, if this police commissioner is a local officer, that a provision authorizing the mayor to appoint is not rendered invalid by a power given to the governor to remove. The mayor, and the mayor alone, appoints to this office, and the express provision of the constitution is thus complied with.

Even if this view is not correct, it would not follow that the whole act is void. The act was passed to reorganize the police department of the city of New York. It provided for the appointment by the mayor of a police commissioner, fixed the term for which he should hold that office, provided for the appointment of his deputies, and prescribed their duties; and the substance of this act was re-enacted in the amendments to the charter passed in the same year, and which became a law on April 4, 1901. Section 270, c. 466, Laws 1901. Eliminating the provision of the act which gives the governor the power of removal, the intent of the legislature is preserved. The act is complete in all its parts. The mayor would have power to appoint and remove. The power thus given can be exercised without any relation to the additional power which is sought to be given to the governor to remove a police commissioner when, in his opinion, the public interests require; and the elimination of the provision giving the governor the power to remove would not at all affect the other provisions of the act, which are complete in themselves. "It is a universal rule that, where a part of a statute is unconstitutional, that fact does not authorize the courts to declare the remainder void, unless the provisions are so connected together in subject-matter, meaning, or purpose that it cannot be presumed the legislature would have passed the one without the other. * * * And this rule applies as well where the forms observed are sufficient for some of the purposes of the act, and not for others, and where a part of the act was constitutionally invalid for any other reason." People v. Briggs, 50 N. Y. 566.

In considering an act which abolished the board of assistant aldermen after January 1, 1875, and declared the board of aldermen to be thereafter the common council, it was held that this was a proper exercise of legislative power, and that the fact that the act also contained a provision for the election of aldermen, prescribing a method for their election which was unconstitutional, did not make the provision abolishing the board of assistant aldermen unconstitutuional. Duryee v. Mayor, etc., 96 N. Y. 477. As therein said:

"It is only when the various enactments of a legislative body are plainly dependent upon each other, and so inseparably connected in matter and design that they cannot be divided without defeating the object of the statute, that the invalidity of one provision will entail that of those remaining. If effect can, consistently with the general legislative intent, be given to such parts of a statute as are not in conflict with paramount authority, and are within the authority of the body electing them, it is the duty of a court, while rejecting its unconstitutional and unauthorized parts, to enforce the remaining provisions of a law which are within the legislative power of its authors. When part only of a statute or a section is unconstitutional, that part only is void, unless the other provisions are so dependent and connected with that which is void that it cannot be presumed that the legislature would have enacted the one without the other."

Here, leaving out the provision authorizing the governor to remove the police commissioner, the act accomplishes the intent of the legislature, in abolishing four police commissioners, and substituting in their place a single commissioner, abolishing the position of chief of police, providing for the appointment of two deputy commissioners, and for the removal of the commissioner by the mayor of New York; and, although power is also attempted to be given to the governor to remove, the power of removal is not at all connected with the general scope of the act changing the governing power of the police department from four commissioners to one, and abolishing the office of chief of police. If we should assume, therefore, that the contention of the appellant is correct,—that the power given to the governor to remove is a violation of the constitution,—effect could be given, consistent with the general legislative intent, to the remainder of the act; and it would be the duty of the court to reject the unconstitutional provision, and to enforce the remaining provisions of the law, which were within the legislative power.

It is also claimed that the act in question is in conflict with section 16 of article 3 of the constitution, which provides that no private or local bill shall embrace more than one subject, and that shall be expressed in the title. We think this title is sufficient; that the bill has but one subject, viz., to reorganize the police power of the city of New York; and that the subject is embraced in the title. People v. Briggs, 50 N. Y. 553.

It is also claimed that this bill violates section 6 of article 1 of the constitution, which provides that no person shall be deprived of property without due process of law, and also section 10 of article 1 of the constitution of the United States, which provides that no state shall pass any law impairing the obligation of contracts; and this, based upon the provision of the charter for a police pension fund, by which any member of the police force, upon the expiration of 25

years' service, shall be entitled to retire, upon an annual compensation, to continue during his life. The relator became a patrolman on June 19, 1878. His right to a pension depended upon his connection with the police force for 25 years, and, as that period had not elapsed when this act was passed, he was not then entitled to a pension. There was no contract between the relator and the city or the state by which he was to be continued in office for 25 years, so as to enable him to have a pension at the expiration of that period. Subdivision 10 of section 353 of the charter provides that 2 per centum of the monthly pay, salary, or compensation of the police force shall be deducted monthly by the treasurer of the police force from the salary of each member of the force, and such sum shall be paid to the treasurer of the police pension fund, and that from this fund, which is made up, in addition to this contribution by the members of the force, from money derived from various sources, which are specified in the section, are to be paid the pensions awarded to police officers as provided for by the subsequent sections of the charter; and the city is required, by taxation, to make up any deficiency in this fund. Nothing in this section entitles an officer to a pension unless he comes within the provision of the act. The effect of this provision is to reduce the salaries of the officers by applying 2 per cent. thereof to pay to those to whom pensions have been granted the pensions that they are to receive. It gives to those who are not by law entitled to such pensions no right to participate in future contributions to the fund. Until the relator had been 25 years upon the force, he could have no interest in the fund which was raised from year to year, and the principal of which was applied to police pensions. Nor was there any contract by which he was to receive any salary or any pension from any particular time, which was violated by his removal from office. A further discussion of the question is unnecessary. To hold that the legislature had no power to abolish the office of chief of police or of commissioners of police would impose a new limitation upon the power of the legislature (a power which it had always exercised without question, or, when questioned, always upheld) which is not in express terms restricted by the constitution, and would violate the principle that has been uniformly applied,—that the power of the legislature is absolute, except as limited by the constitution.

We find nothing in this provision of the act removing the relator from office which violates any provision of the constitution, and for that reason the order appealed from should be affirmed, with costs.

HATCH and LAUGHLIN, JJ., concur.

VAN BRUNT, P. J. I concur in the result reached by Mr. Justice INGRAHAM in this case, but I dissent from so much of his opinion as holds that part of the act giving to the governor the power of removal to be constitutional.

PATTERSON, J., concurs.